# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

**DAVID SHEFFIELD,**

   *Plaintiff*,

v.

   Case No.: 2018-cv-02701-JPM-cgc
   JURY TRIAL DEMANDED

**INTERNATIONAL PAPER CO.,**

   *Defendant*.

## MEMORANDUM IN SUPPORT OF INTERNATIONAL PAPER COMPANY'S MOTION FOR SUMMARY JUDGMENT

Defendant International Paper Company (IP) now submits this Memorandum in Support of its Motion for Summary Judgment on Plaintiff David Sheffield's claims, stating the following:

## I.
## INTRODUCTION

IP is Plaintiff David Sheffield's statutory employer under the Louisiana Workers' Compensation Act (LWCA), La. Rev. Stat. Ann. §§ 23:1020-1415. As a result, IP is immune to Plaintiff's claims. The fall and injuries that give rise to this lawsuit allegedly occurred while Plaintiff was working as the employee of an IP subcontractor and rendering services that were part of and essential to IP's ability to generate its goods and services. Accordingly, Plaintiff is limited to the remedies provided by the LWCA and may not pursue the negligence and premises liability claims that he has asserted. Potential liability for workers' compensation in Louisiana comes with "[a] concomitant right to tort immunity."[1]

---

[1] *Mitchell v. So. Scrap Recycling, L.L.C.*, 93 So.3d 754, 757 (La. Ct. App., 1st Cir., 2012).

If IP were not immune to Plaintiff's claims, then the company still would be entitled to judgment as a matter of law. Louisiana, like Tennessee, requires Plaintiff to prove the breach of a duty, and discovery does not show that IP failed to exercise reasonable care.[2] More importantly, the facts do not show that IP owed Plaintiff a duty in the first place because the alleged risk of which Plaintiff complains—a damaged curb—was open and obvious.[3] Plaintiff testified that he had a clear view of the curb when he visited IP's mill in Mansfield, Louisiana (Mansfield Mill), on the date of his alleged fall; that he had visited the Mansfield Mill dozens of times before his alleged fall; and that IP posted "safety signs . . . everywhere." Plaintiff also violated express instructions from IP to remain on the driver's side of his vehicle, in the "safe zone," and instead unbound his delivery on the passenger side, where he allegedly fell.

IP's Motion for Summary Judgment should be granted.

## II.
## RELEVANT FACTS[4]

At all times relevant to this action, Plaintiff was employed as a long-haul driver for JRM Logging. (Statement of Undisputed Material Facts ¶ 8.) JRM Logging had a subcontract with Red River Nacogdoches TRS LP (Red River). (*Id.* ¶ 5.) Red River, in turn, had a Pulpwood Supply Agreement (Agreement) with IP. (*Id.* ¶ 1.) Through this chain of relationships, JRM Logging's job was to deliver to IP the pulpwood that Red River promised to supply. (*See id.* ¶¶ 4-5, 7.)

---

[2]   *See Labarre v. Occidental Chemical Co.*, 250 So.3d 932, 938 (La. Ct. App., 1st Cir., 2018) (negligence); *Searile v. Ville Platte Med. Ctr., LLC*, 194 So.3d 1205, 1208 (La. Ct. App., 3rd Cir., 2016) (premises liability).

[3]   *See, e.g., Handy v. City of Kenner*, 97 So. 3d 539, 542 (La. Ct. App., 5th Cir., 2012) ("[D]efendants generally have no duty to protect against an open and obvious hazard.")

[4]   Taken from IP's contemporaneously-submitted Statement of Undisputed Material Facts.

2

On June 4, 2018, Plaintiff delivered a load of pulpwood to the Mansfield Mill, at 9:28 A.M. (*Id.* ¶ 9.) Plaintiff had made dozens of prior deliveries to the Mansfield Mill. (*Id.* ¶ 15.) He never before had fallen at the Mansfield Mill or experienced any other kind of injury there. (*Id.* ¶ 17.)

As he always had done, Plaintiff pulled his truck onto the scale at the entrance to the Mansfield Mill's wood yard on June 4, 2018, weighed in, and continued to the designated unbinding area. (*Id.* ¶¶ 11, 16.) Once he arrived there, Plaintiff exited the truck, proceeded down its length on the driver's side, and began to release the straps from his trailer. (*Id.* ¶ 12.) He then walked around the back of the trailer and up the passenger side, in violation of IP policy, to release the straps there. (*Id*. ¶¶ 13, 26-29.)

IP provides every driver that comes onto the Mansfield Mill's premises with a training booklet. (*Id.* ¶ 24.) A driver "must first receive a training booklet from [IP]'s global sourcing, fiber resourcing" "to enter the Mansfield Mill." (*Id*. ¶ 25.) That booklet details that "[b]inders must be loosened and loads must be unbound from [the] driver's side at Mansfield Mill." (*Id*. ¶ 26.)

The passenger-side curb "is not designed for any personnel, driver employee alike [*sic*] to be around it." (*Id*. ¶ 27.) "It is solely designed for the purpose of ensuring that the truck is against the unbinding rack for the driver's safety." (*Id*. ¶ 28.) The driver's side of the truck, and not the passenger side, is "the safe zone." (*Id*. ¶ 29.)

At some point, while on the passenger side of his truck, Plaintiff allegedly looked up to release a strap, stepped back onto the concrete curb, and fell.[5] (*Id*. ¶ 14.) The curb at issue was "busted" when Plaintiff arrived at the Mansfield Mill. (*Id*. ¶ 30.) And because the curb "was

---

[5] This fact is undisputed solely for purposes of summary judgment. (*See* Statement of Undisputed Material Facts at ¶ 14 & n. 3.) IP has no incident report or other record of Plaintiff's having fallen. (*Ibid.*) None of the other IP employees onsite at the Mansfield Mill reported seeing Plaintiff fall. (*Ibid.*) Plaintiff made deliveries to the Mansfield Mill after his alleged fall on June 4, 2018, and for the next two days as well. (*Ibid.*)

3

already crumbled," Plaintiff "could see it when [he] pulled into the [M]ill." (*Id*. ¶¶ 31-32.) Plaintiff also noticed "that there were safety signs everywhere." (*Id*. ¶ 33.) He nevertheless allegedly fell and "struck his head, neck and back on the concrete." (*Id.* at n. 1.)

Not one other fall was reported at the Mansfield Mill in the five years preceding Plaintiff's alleged fall. (*Id*. ¶ 34.) IP has no incident report or other record of Plaintiff's alleged fall. (*Id*. ¶ 35.) And none of IP's employees at the Mansfield Mill on June 4, 2018, reported seeing Plaintiff fall. (*Id*. ¶ 36.) Plaintiff left the Mansfield Mill at 9:39 A.M., eleven minutes after he arrived. (*Id*. ¶ 9.)

Plaintiff returned to the Mansfield Mill in the afternoon of June 4, 2018, to make another delivery. (*Id*. ¶ 18.) He did not fall or experience any other kind of injury at the Mansfield Mill during that delivery. (*Id*. ¶ 19.) Plaintiff also made four deliveries to the Mansfield Mill the following day, June 5, 2018, and the day after that one, June 6, 2018. (*Id*. ¶¶ 20, 22.) He did not fall or experience any other kind of injury at the Mansfield Mill during any of those deliveries. (*Id*. ¶¶ 21, 23.)

Plaintiff was fired by JRM Logging on June 7, 2018, not for any alleged injuries, but because he was "rude and uncooperative." (*Id*. ¶ 38.) He and his "supervisor had a disagreement." (*Id*. ¶ 37.)

## III.
## PROCEDURAL POSTURE

On October 11, 2018, Plaintiff sued IP, asserting claims of negligence and premises liability due to his alleged fall. (*See generally* Compl., ECF No. 1.) IP answered Plaintiff's Complaint, denying liability, on November 2, 2018. (*See generally* Ans., ECF No. 9.) IP also explained in its Answer that Plaintiff's exclusive remedy was the LWCA (*id.* at Second

4

Affirmative Defense) and that Plaintiff acted with full knowledge of the risks and hazards at issue (*id.* at Fourth Affirmative Defense).

The parties since have exchanged initial disclosures (*see, e.g.,* IP's Notice of Service, ECF No. 17); propounded written discovery (*see, e.g.,* ECF Nos. 21 & 22); taken the depositions of Plaintiff, an IP Representative, and two of Plaintiff's treating physicians (*see, e.g.*, ECF Nos. 37); and conducted a site inspection at the Mansfield Mill.

This Motion followed.

## IV.
## LAW & ARGUMENT

IP is entitled to judgment as a matter of law for two reasons. First, as Plaintiff's statutory employer under the LWCA, IP is immune to Plaintiff's claims. Second, the undisputed facts establish that IP owed Plaintiff no duty. The damaged curb that Plaintiff alleges caused him to fall was open and obvious, and Plaintiff violated IP policy when he unbound his delivery on the passenger side of his truck. He should have remained, as instructed by IP, on the driver's side, in "the safe zone." Plaintiff therefore can prove neither his negligence nor premises-liability claims.

### A.  Legal Standard.

IP's Motion for Summary Judgment should be granted. Federal Rule of Civil Procedure 56 states that "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To rule on a motion for summary judgment, a court must make a "threshold inquiry" as to whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Clark v.*

5

*Walgreen Co.*, 424 F. App'x 467, 471 (6th Cir. 2011) (internal quotation marks and citation omitted)).

A genuine issue of material fact is a dispute between the parties "that might affect the outcome of the suit under the governing law." *Id.* But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). And a court need not "search the entire record to establish that it is bereft of a genuine issue of material fact." *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)). Instead, "a party who does *not* have the trial burden of production may rely on a showing that a party who *does* have the trial burden cannot produce admissible evidence to carry its burden as to the fact." *Id.* (emphasis added); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). In this way, the moving party may force the nonmoving party "to put up or shut up [on] the critical issues of [an] asserted cause[] of action." *Hullom v. City of Jackson*, 620 F. Supp. 2d 895, 897 (W.D. Tenn. 2009) (quoting *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995)) (internal quotation marks omitted; alterations in original); *see also Tucker*, 539 F.3d at 531 (citing *Browning v. Dep't of Army*, 436 F.3d 692, 695 (6th Cir. 2006)) ("While all inferences are drawn in favor of the non-moving party, that party still must present some affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment.").

6

### B. Louisiana Law Governs Plaintiff's Claims.

Louisiana law governs here because Plaintiff alleges that his injuries occurred there. In diversity actions like this one (*see* Compl, ECF No. 1, ¶ 2), federal district courts apply the law of the forum state, including the forum's choice-of-law rules. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Tennessee follows the *lex loci delicti*, or the law of the place where the tort allegedly occurred. *See Great American Ins. v. Hartford Accident & Indemnity Co.*, 519 S.W.2d 579, 580 (Tenn.1975). In this case, that place is IP's Mill in Mansfield, Louisiana.

### C. The LWCA Deems IP Plaintiff's Statutory Employer Immune To Plaintiff's Claims.

IP is immune to Plaintiff's claims because IP was Plaintiff's "statutory employer" when Plaintiff allegedly was injured at the Mansfield Mill. Under the LWCA, employers must provide workers' compensation benefits to employees who are injured in accidents that arise from the course and scope of their employment. *Mitchell v. So. Scrap Recycling, L.L.C.*, 93 So.3d 754, 757 (La. Ct. App., 1st Cir., 2012). The rights and remedies under the LWCA are exclusive unless a separate statute makes other rights or remedies available. La. Rev. Stat. Ann. § 23:1032(A)(1)(a). The LWCA "applies both to a direct employer / employee relationship, as well as to a statutory employer / employee relationship." *Mitchell*, 93 So.3d at 757 (citing *Labranche v. Fatty's, LLC, 2010-0475*, 48 So.3d 1270, 1272 (La. Ct. App., 1st Cir. 2010)). In both cases, the LWCA imposes liability for workers' compensation benefits "and [a] concomitant right to tort immunity." *Id.* at 759; *see also* La. Rev. Stat. Ann. § 23:1061(A)(1) (stating that principals may contract with others to perform some or all of the work that is part of the principals' "trade, business, or occupation" and thereby obtain the "exclusive remedy protections of R.S. 23:1032").

7

### 1. IP is Plaintiff's Statutory Employer.

The LWCA deems IP Plaintiff's statutory employer. Statutory employer status is a question of law, *Ramos v. Tulane Univ. of La.*, 951 So.2d 1267, 1269 (La. Ct. App., 4th Cir., 2007), and an employer bears the initial burden of "proving its entitlement to immunity," *Mitchell*, 93 So.3d at 758. But when the services that a worker is to provide are "contemplated by or included in" a contract between the principal (here, IP)[6] and anyone other than the worker's immediate employer (here, Red River), the LWCA mandates that "[a] statutory employer relationship *shall exist*." La. Rev. Stat. Ann. § 23:1061(A)(2) (emphasis added). And the relationship exists whether the worker is deemed to be an employee or an independent contractor.[7] *Mitchell*, 93 So.3d at 759.

Thus, by contracting with another for the execution of work that is part of the principal's trade, business, or occupation, a principal becomes a statutory employer with a defense to tort liability. *See* La. Rev. Stat. Ann. § 23:1061(A)(1). "Because of the exclusiveness of the compensation remedy, statutory employers have also been afforded immunity from tort liability for work-related injuries suffered by the employees of their various contractors even though these statutory employers never actually pay any worker's compensation benefits." *Thomas v. State, Dept. of Transp. and Development*, 662 So.2d 788, 792 (La. Ct. App., 2nd Cir., 1995).

In this case, IP contracted with Red River to supply IP with pulpwood, and Red River subcontracted some of its responsibilities to JRM Logging, Plaintiff's employer. (*See* Statement

---

[6] A "principal" under the LWCA is "any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof." La. Rev. Stat. Ann. § 23:1032(A)(2).

[7] Thus, it is of no consequence that IP's Agreement with Red River makes any "servant, agent, employee, or supplier" of Red River an independent contractor rather than an employee. (*See* Statement of Undisputed Material Facts at **Ex. A** § 10.)

of Undisputed Material Facts ¶¶ 1-9.) IP is thus immune to claims for any injuries suffered by Plaintiff in the course and scope of his duties for JRM Logging to the extent that those duties were in furtherance of IP's trade, business, or occupation. *See* La. Rev. Stat. Ann. § 23:1061(A)(1).

**2.    Plaintiff's duties were part of and essential to IP's ability to generate its products.**

Plaintiff's pulpwood delivery on behalf of JRM Logging satisfies that standard because it formed "an integral part of or [was] essential to the ability of [IP] to generate [IP's] goods, products, or services." *Lopez v. U.S. Sprint Commc'ns Co.*, 973 So. 2d 819, 826 (La. Ct. App., 4th Cir., 2007), *writ not considered sub nom., Lopez v. US Sprint Commc'ns Co.*, 976 So. 2d 708 (La. 2008). *Savant v. James River Paper Co.*, 780 F. Supp. 393 (M.D. La. 1992), illustrates this point. There, the Middle District of Louisiana held that a paper mill was a statutory employer of a contractor who had been retained to install a system that would remove plastic contaminants. While working, the contractor slipped and fell on a substance that was at the paper mill. *Id.* at 394. The court concluded that the contractor had been performing work that was essential to the paper mill's ability to turn wood into paper products, because such a task would have been impossible without cleaning the stock or pulp. *Id.* at 396. Thus, the court found that the contractor's exclusive remedy was under the LWCA, and the plaintiff's tort claims against the mill were barred. *Ibid.*

*A fortiori* here: If removing plastic contaminants was essential to a paper mill's ability to generate its goods and products in *Savant*, then the delivery of the pulpwood that is a necessary constituent of such products must be even more essential to the Mansfield Mill in this case.

**3.    Subcontractors satisfy the LWCA just as well as contractors.**

That Plaintiff's immediate employer (JRM Logging) was a <u>sub</u>contractor for IP rather than a contractor (like Red River) does not diminish IP's immunity here. The LWCA embraces the "two-contract theory," which "establish[es] a compensation obligation on the part of a principal

9

who contractually obligates itself to a third party for the performance of work and who then subcontracts with intermediaries whose employees perform all or any part of the work." *Lopez*, 973 So. 2d at 825 (quoting *Thomas v. State Dep't of Transp. & Devel.*, 662 So.2d 788, 792 (La. Ct. App., 2nd Cir., 1995)). "In return for its compensation obligation," Louisiana courts have explained, "such a principal is then insulated from tort liability." *Ibid.*

The two-contract theory expressly contemplates relationships among the three parties at issue in this case: (1) a general contractor—Red River; (2) a subcontractor (JRM Logging) hired by the general contractor; and (3) an employee of the subcontractor (Plaintiff). IP is thus immune to Plaintiff's claims.

### D. IP Neither Owed Nor Breached Any Duty to Plaintiff.

Plaintiff's claims for negligence and premises liability fail because the damaged curb to which Plaintiff attributes his alleged fall was open and obvious, and IP therefore owed Plaintiff no duty to protect against it. In Louisiana, negligence claims consist of five elements: (1) duty, (2) breach of duty, (3) actual causation, (4) proximate causation, and (5) damages. *See Labarre v. Occidental Chemical Co.*, 250 So.3d 932, 938 (La. Ct. App., 1st Cir., 2018). Plaintiff's premises liability claim likewise requires him to show that IP failed to exercise reasonable care.[8] *See Searile v. Ville Platte Med. Ctr., LLC*, 194 So.3d 1205, 1208 (La. Ct. App., 3rd Cir., 2016).

In Louisiana, defendants generally do not have a duty to protect against an open and obvious hazard. *Hutchinson v. Knights of Columbus, Council No. 5747*, 866 So. 2d 228, 234–35 (La. 2004). A landowner's duty does not extend to every risk that a person may encounter on his

---

[8] The remaining elements of a premises liability claim in Louisiana are (1) the thing that caused the alleged damage was in the defendant's custody or control, (2) the thing had a defect that presented an unreasonable risk of harm, (3) the defendant knew or should have known about the defect, and (4) the alleged damage could have been prevented by the exercise of reasonable care. *Searile*, 194 So.3d at 1208.

10

property. *Howell v. Union Pac. R. Co.*, 992 So. 2d 975 (La. Ct. App., 3rd Cir., 2008). Specifically, landowners are *not* liable for injuries sustained from a condition that should have been observed by the individual in the exercise of reasonable care, or that was as obvious to a visitor as to the landowner. *See Shelton v. Aetna Cas. & Sur. Co.*, 334 So. 2d 406, 410–11 (La. 1976); *Guillory v. Audubon Ins. Co.*, 417 So. 2d 892, 896 (La. Ct. App., 3rd Cir., 1982).

The relevant test to determine whether a landowner owes a duty to an individual on his land is "whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others." *Searile*, 194 So.3d at 1208. If the facts of a case show the complained of condition should be obvious to all, then the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. *Pitre v. Louisiana Tech University,* 673 So.2d 585, 591 (La. 1996); *see also Williams v. Leonard Chabert Med. Ctr.,* 744 So.2d 206, 211 (La. Ct. App., 1 Cir., 1999). "A pedestrian has a duty to see that which should be seen and is bound to observe whether the pathway is clear." *Williams*, 744 So.2d at 211.

*Guillory v. Audubon Ins. Co.*, 417 So. 2d 892, 896 (La. Ct. App., 3rd Cir., 1982), is a good example. There, the Louisiana Court of Appeals held that a fallen tree and the branches lying on the ground around the tree did not create an unreasonably dangerous condition. While observing his brother cut down a tree on their father's property, the plaintiff there was injured when he tripped over a branch. *Id*. at 894. The court concluded that even though the landowner's failure to remove the tree branches was a cause-in-fact of the plaintiff's injuries, the landowner did not breach a duty to the plaintiff. *Id*. at 896. The court reasoned that the fallen tree branches around the tree did not create an unreasonable risk of harm because the condition was patently obvious and easily avoidable. *Id*. It also noted that the defendant's insured, the plaintiff's father, was not even present

11

when the trees were being cut and had no knowledge of the potentially dangerous condition. *Id.* at 896-97. Thus, the court found that the defendant was not liable to the plaintiff for negligence.

Just so here. Plaintiff testified that the damaged curb at issue was "busted" when he arrived at the Mansfield Mill on June 4, 2018, and that he "could see it when [he] pulled into the [M]ill." (Statement of Undisputed Material Facts ¶¶ 30, 32.) He also had visited the Mansfield Mill over a dozen times prior to his alleged fall and observed that IP posted "safety signs . . . everywhere." (*Id.* ¶ 33.) Then, too, Plaintiff's being in the vicinity of the damaged curb, on the passenger side of his truck, was a violation of IP policy: He had been expressly instructed to remain in the "safe zone," on the driver's side of his vehicle. (*Id.* ¶¶ 24-29.)

Additionally, like the landowner in *Guillory*, IP had no notice that the damaged curb was potentially dangerous. For one thing, Plaintiff never should have been anywhere near it. The curb "is solely designed for the purpose of ensuring that the truck is against the unbinding rack for the driver's safety." (Statement of Undisputed Material Facts ¶ 28.) It "is not designed for any personnel, driver employee alike [*sic*] to be around it." (*Id.* ¶ 27.) For another, not one other fall had been reported at the Mansfield Mill in the five years preceding Plaintiff's alleged injury. (*Id.* ¶ 34.) IP has no incident report or other record of Plaintiff's alleged fall. (*Id.* ¶ 35.) And none of IP's employees at the Mansfield Mill on June 4, 2018, reported seeing Plaintiff fall. (*Id.* ¶ 36.) Plaintiff left the Mansfield Mill at 9:39 A.M., eleven minutes after he arrived. (*Id.* ¶ 9.) His fall was thus improbable—assuming it happened at all.

In fact, the Louisiana Court of Appeals expressly has held that "a simple curb in a parking lot, in and of itself, does not create an unreasonable risk of harm." *Williams v. Liberty Mut. Fire Ins. Co.*, 217 So. 3d 421, 426 (La. Ct. App., 1st Cir., 2017). In that case, the plaintiff sought to recover from a restaurant for injuries she sustained when she fell off a curb upon leaving the

12

restaurant. *Id*. at 426. She argued the curb created an unreasonable risk of harm because it was not level, not marked, and not painted. *Id*. at 427. But the court concluded that the curb did not create an unreasonable risk of harm because the plaintiff was walking and talking when she fell, and the curb was just an ordinary curb. *Id*. at 428. Thus, the court held that the trial court's finding that the curb was an open and obvious risk supported the grant of summary judgment in favor of the defendant. *Id*.

This Court should do the same.

## V.
## CONCLUSION

IP is Plaintiff's statutory employer, and therefore, immune to Plaintiff's claims. If IP were not immune to Plaintiff's claims, then it could not be liable for them because IP neither owed nor breached any duty to Plaintiff. IP is entitled to judgment as a matter of law, and its Motion for Summary Judgment should be granted.

RESPECTFULLY SUBMITTED, this the 11th day of December 2019.

/s/ Gadson W. Perry
Gadson W. Perry (TN BPR No. 30359)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
will.perry@butlersnow.com

*Counsel for International Paper Co.*

13

## CERTIFICATE OF SERVICE

I hereby certify that, on December 11, 2019, I served the foregoing upon the following counsel of record via the Court's CM / ECF system:

**William B. Ryan, Esq.**
**Drew Davis, Esq.**
Donati Law, PLLC
1545 Union Avenue
Memphis, TN 38104
Telephone: (901) 278-1004
Facsimile: (901) 278-3111
billy@donatilaw.com
drew@donatilaw.com

**Kurt Arnold, Esq.**
**Caj Boatright, Esq.**
**Roland Christensen, Esq.**
**Alison Baimbridge, Esq.**
Arnold & Itkin, LLP
6009 Memorial Drive
Houston, TX 77098
Telephone: (713) 222-3800
Facsimile: (713) 222-3850
karnold@arnolditkin.com
cboatright@arnolditkin.com
rchirstensen@arnolditkin.com
abaimbridge@arnolditkin.com

*Counsel for Plaintiff*

                                        */s/ Gadson W. Perry*

50486100.v1